IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00524-REB-KLM

HOMAIDAN AL-TURKI,

     Plaintiff,

v.

ANN TOMSIC, individually and in her official capacity as Chief Deputy District Attorney,
GEORGE BRAUCHLER, individually and in his official capacity as District Attorney,
JON BIBIK, Special Agent, in his individual capacity,
ROBERT GOFFI, Chief Division Counsel, in his individual capacity,
PAUL HOLLENBECK, in his individual capacity, and
JOHN DOES 1-10, in their individual and/or official capacities,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Dismiss** [#13],[1] filed by Defendants Ann Tomsic ("Tomsic") and George Brauchler ("Brauchler"); on the **Motion to Dismiss** [#22], filed by Defendant Paul Hollenbeck ("Hollenbeck"); and on the **Motion to Dismiss** [#56], filed by Defendants Jon Bibik ("Bibik") and Robert Goffi ("Goffi"). Plaintiff filed Responses [#30, #32, #65] in opposition to the Motions, and Defendants filed Replies [#45, #47, #70]. The Motions have been referred to the undersigned for recommendation [#38, #57] pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c). The Court has reviewed the Motions, Responses, Replies, the entire case file, and the applicable law, and

_____

[1] "[#13]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motions [#13, #22, #56] be **GRANTED**.

## I. Summary of the Case

Plaintiff is currently incarcerated in Beaumont, Texas, but at all times relevant to the events underlying this matter, he was a resident of and domiciled in the State of Colorado. *Am. Compl.* [#28] ¶ 6.  He asserts this lawsuit for declaratory and injunctive relief against five named federal and state agency employees, as well as against ten unnamed John and Jane Doe Defendants.  *Id.* ¶ 1.  In short, Plaintiff argues that from November 30, 2012, through the present, Defendants defamed and stigmatized Plaintiff "by inventing and disseminating false allegations that Plaintiff is a terrorist, is associated with terrorists, and/or poses a national security concern," thereby violating his procedural due process rights under the Fifth and Fourteenth Amendments.  *Id.* ¶¶ 2-3.  At all relevant times, Defendant Tomsic was the Chief Deputy District Attorney for the 18th Judicial District of Colorado.  *Id.* ¶ 7.  Defendant Brauchler was the District Attorney for the 18th Judicial District of Colorado. *Id.* ¶ 8.  Defendant Hollenbeck was the Associate Director of Offender Services for the Colorado Department of Corrections ("CDOC").  *Id.* ¶ 9.  (The Court refers to Defendants Tomsic, Brauchler, and Hollenbeck collectively as the "State Defendants.").  Defendant Bibik was an agent with the Federal Bureau of Investigation ("FBI").  *Id.* ¶ 10.  Defendant Goffi was an attorney with the FBI.  *Id.* ¶ 11.  (The Court refers to Defendants Bibik and Goffi collectively as the "Federal Defendants.").  The unnamed John and Jane Doe Defendants are all either FBI or local law enforcement personnel.  *Id.* ¶ 12.

Plaintiff, a citizen of the Kingdom of Saudi Arabia, has been incarcerated by CDOC

since his conviction in Arapahoe County District Court Case No. 05CR1571.  He has served nine years of his indeterminate sentence of eight years to life.  *Id.* ¶¶ 13-15.  On April 18, 2012, Plaintiff initiated a prisoner transfer application, pursuant to an international prisoner transfer treaty between the United States and the Kingdom of Saudi Arabia, in which he sought to serve the remainder of his sentence in a prison in his home country of Saudi Arabia.  *Id.* ¶¶ 16-17.  When a foreign national is incarcerated in a state prison, he must first obtain the approval of the State before his application can be reviewed and approved by the Federal Government.  *Id.* ¶ 18.  The Department of Justice Guidelines provide that, absent a "compelling federal interest" "[g]enerally, the Department of Justice defers to a state's judgment, and approves the transfer of state prisoners approved by the state."  *Id.* ¶ 19.

In short, Plaintiff alleges that various defamatory statements by Defendants caused Tom Clements, who was the Executive Director of the CDOC during the time period relevant to this action, to change his signed approval of Plaintiff's request for a transfer to Saudi Arabia, into a rejection of this request in March 2012.  *See, e.g., id.* ¶¶ 59-61, 74, 112, 121, 126-27.  Plaintiff was eligible and planned to reapply for a treaty transfer to Saudi Arabia as of March 12, 2015, per CDOC regulations.  *Id.* ¶¶ 151-52.  He asserts that, "[w]ithout the injunctive relief sought herein, if Plaintiff reapplies, Defendants will again sabotage his application with false, malicious, and defamatory statements."  *Id.* ¶ 153.

Based on the foregoing events, Plaintiff asserts eight claims: (1) violation of Plaintiff's Fourteenth Amendment due process rights ("Stigma-Plus") against Defendants Brauchler and Tomsic in their individual and official capacities; (2) violation of Plaintiff's Fifth Amendment due process rights ("Stigma-Plus") against Defendants Bibik and Goffi

in their individual and official capacities; (3) conspiracy to violate Plaintiff's Fourteenth Amendment due process rights ("Stigma-Plus") against Defendants Brauchler, Tomsic, Hollenbeck, and John and Jane Does 1-5 in their individual and official capacities; (4) conspiracy to violate Plaintiff's Fifth Amendment due process rights ("Stigma-Plus") against Defendants Bibik, Goffi, and John and Jane Does 6-10 in their individual and official capacities; (5) violation of Plaintiff's Fourteenth Amendment due process rights ("Extreme Stigmatization and Defamation"), against Defendants Brauchler and Tomsic in their individual and official capacities; (6) violation of Plaintiff's Fifth Amendment due process rights ("Extreme Stigmatization and Defamation") against Defendants Bibik and Goffi in their individual capacities only; (7) conspiracy to violate Plaintiff's Fourteenth Amendment due process rights ("Extreme Stigmatization") against Defendants' Brauchler and Tomsic in their individual and official capacities; and (8) conspiracy to violate Plaintiff's Fifth Amendment due process rights ("Extreme Stigmatization") against Defendants Bibik and Goffi in their individual capacities only. *Id.* ¶¶ 154-228. In the Motions [#13, #22, #56], Defendants seek dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court addresses the specifics of Defendants' arguments regarding dismissal in the Analysis section below.

## II.  Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the court at any point in the proceeding. *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3). A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a

facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.    Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to

support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

## III. Analysis

### A.   Damages

Defendants have made mountains out of molehills with respect to certain issues despite the clear language of the Amended Complaint [#28]. *See, e.g.*, *Response* [#30] at 6 (stating that "Defendants have constructed a straw man and then attacked it with vigor"). For example, Defendants Bibik and Goffi appear to condemn Plaintiff for an asserted failure to be clear in the Amended Complaint [#28] about whether he is seeking damages. *See, e.g.*, *Reply* [#70] at 1. However, although the Court appreciates Defendants' effort to be thorough, there is no obvious intent to pursue damages stated in the Amended Complaint. *See, e.g.*, [#28] at 35. Plaintiff confirms this conclusion in the briefing. *See Response* [#65] at 8 (stating that Plaintiff "does not seek damages").

In the absence of a claim seeking damages, defenses raised by Defendants which are specific to damages are moot. For example, Defendants Tomsic, Brauchler, and Hollenbeck's argument regarding qualified immunity is moot. *See Meiners v. Univ. of Kans.*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004) (stating that the defense of qualified immunity is applicable only for monetary damages and has no application to claims for declaratory or injunctive relief). The same is true for their arguments asserting the defense of absolute immunity. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (stating that "absolute immunity bars suits for money damages for acts made in the exercise of prosecutorial or judicial discretion"). Similarly, the arguments regarding Eleventh Amendment immunity by these three Defendants are also moot to the extent they pertain to damages sought against them in their official capacities. *See Fed. Maritime*

*Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002).  In addition, with respect to the Federal Defendants, "*Bivens* creates a cause of action only against federal officials in their individual capacities for money damages . . . ."[2] *James v. Hamaker*, No. 15-cv-02425-GPG, 2016 WL 409433, at *1 (D. Colo. Feb. 3, 2016) (citing *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005); *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)).

Accordingly, the Court proceeds to examine Defendants' arguments pertaining to Plaintiff's claims to the extent Plaintiff seeks non-monetary relief.

**B.    The State Defendants' Motions [#13, #22]**

The Court next examines the Motions [#13, #22] asserted by the State Defendants, i.e., Defendants Tomsic, Brauchler, and Hollenbeck.  Categorizing the type of equitable relief Plaintiff seeks is crucial to adjudicating Defendants' Motions, and the Court therefore begins there.  Plaintiff seeks the following non-monetary relief:

> a. A public name-clearing hearing.  Plaintiff seeks for this hearing to be conducted by a neutral judge.  Plaintiff seeks to conduct discovery in preparation for this hearing.  Plaintiff seeks to be allowed to call witnesses at this hearing.  Plaintiff seeks to confront all evidence presented against him at this hearing.  Plaintiff seeks to cross-examine any witnesses that may be called against him at this hearing.

> b. Plaintiff further seeks an order from this Court enjoining all Defendants from repeating false claims about Plaintiff; whether to the media, to the parole board, or to any other third party.

---

[2]  As addressed more fully below in Section III.C., Plaintiff brings this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  In *Bivens*, the United States Supreme Court recognized a cause of action for money damages and injunctive relief against federal officials acting under color of their authority for violations of an individual's constitutional rights.  403 U.S. at 395-97.  *Bivens* only authorizes suit against federal officials in their individual capacities.  *Smith v. United States*, 561 F.3d 1090, 1093 (10th Cir. 2009).

*Am. Compl.* [#28] at 35.[3]

First, although Plaintiff conclusorily states that he is seeking "[d]eclaratory relief, injunctive relief, and other appropriate equitable relief," *Am. Compl.* [#28] at 35, Plaintiff does not state what declaration he may be seeking. "Declaratory relief is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply proclaim liability for past actions." *Chavez v. Schwartz*, 457 F. App'x 752, 754 (10th Cir. 2012). The Amended Complaint fails to specify what Plaintiff wants the Court to declare, regarding either past *or* future conduct. Accordingly, in the absence of any such language, the Court cannot find that Plaintiff is actually seeking declaratory relief.

Regarding injunctive relief, Plaintiff may not utilize § 1983 to sue the state actors in their individual capacities. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (stating that under § 1983, "plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief"). Further, Eleventh Amendment immunity applies to all forms of equitable relief except for prospective injunctive relief. *See Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2014). Thus, only the requests for prospective injunctive relief against the State Defendants in their official capacities remain for the Court to adjudicate on the merits.

### 1.   Extreme Stigmatization

Plaintiff asserts eight causes of action against the various Defendants, but all are due process claims labeled as "stigma-plus" or "extreme stigmatization." *See Am. Compl.*

---

[3] Although the Court recognizes that this relief could ultimately affect whether Plaintiff is approved for a transfer in the future, the Court finds no support in the Amended Complaint [#28] for Defendants' assertion that this lawsuit seeks to directly challenge the denial of Plaintiff's request for transfer to Saudi Arabia. *See, e.g.*, *Motion* [#22] at 8.

[#28] ¶¶ 154-228.  Even though Plaintiff utilizes the phrase "extreme stigmatization," there is no clearly applicable case law which refers to a cause of action by this name.  In fact, the Court has found only one federal case which mentions this phrase, and not in the context of adjudicating a cause of action known as "extreme stigmatization."  *See Renchenski v. Williams*, 622 F.3d 315, 328 (3d Cir. 2010) (discussing a Fifth Circuit Court of Appeals case which found that there was an "extreme stigmatization" associated with being labeled a sex offender).

Plaintiff relies primarily on *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 137-39 (1951), for the proposition that "enemy of the state" defamation must be actionable.  *See Response* [#30] at 23-25.  However, in that case, not only was there was no majority opinion, but Justice Burton's opinion, which announced the opinion of the Court, did not reach the constitutional issue of whether such a claim might be actionable under § 1983.  Since then, bright-line authority from the Tenth Circuit Court of Appeals has provided that "stigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action."  *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981) (citing *Paul v. Davis*, 424 U.S. 693, 697-713 (1976)[4]).  Stigmatization or damage to reputation "is properly vindicated through state tort actions."  *McGhee*, 639 F.2d at 643.  "In order to justify relief under [the] liberty clause of the 14th amendment via § 1983, plaintiff's alleged reputational damage must be entangled with some other 'tangible interests . . . .'"  *Id.*  Plaintiff argues that "the federal courts have had no occasion to decide whether certain labels are so stigmatizing that, if the government falsely and publicly

---

[4]  In *Paul v. Davis*, the Supreme Court provided an in-depth discussion of its earlier holding in *Joint Anti-Fascist Refugee Committee v. McGrath*.

applies them to a person, such defamation gives rise to a Section 1983 cause of action without further requirement." *Response* [#30] at 22. However, given the bright-line rule provided by the Tenth Circuit in *McGhee*, the Court cannot agree with Plaintiff's argument.

As the Court discusses below in Section III.B.2., Plaintiff also presents "stigma-plus" claims in this lawsuit, and these claims are recognized causes of action. However, by asserting an "extreme stigmatization" claim, Plaintiff essentially attempts to assert that a "stigma-only" (as opposed to a "stigma-plus") claim is cognizable under § 1983. As the foregoing discussion makes clear, this type of "stigma-only" injury is not protected by the Constitution, and no § 1983 claim is available for it. *See McGhee*, 639 F.2d at 643.

Finally, to the extent Plaintiff asserts a claim for conspiracy with respect to the extreme stigmatization claim, the Tenth Circuit has stated that "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under the color of state law" is actionable. *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). However, in order for Plaintiff to succeed on his conspiracy claim against the State Defendants under 42 U.S.C. § 1983, he must "plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Snell*, 920 F.2d at 701. In the absence of an underlying cognizable cause of action, Plaintiff's conspiracy claim with respect to extreme stigmatization also fails. *See id.*

Accordingly, the Court **recommends** that Claim Five (extreme stigmatization) and Claim Seven (conspiracy in connection with extreme stigmatization) be **dismissed with prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should attach to a dismissal when the plaintiff has not made allegations "which,

upon further investigation and development, could raise substantial issues").

### 2.    Stigma-Plus

Plaintiff's remaining claims against the State Defendants (i.e., Claim One against Defendants Brauchler and Tomsic, and Claim Three against Defendants Brauchler, Tomsic, and Hollenbeck) invoke the stigma-plus doctrine.

The Tenth Circuit Court of Appeals recently addressed the stigma-plus standard in *Martin Marietta Materials, Inc. v. Kansas Department of Transportation*, __ F.3d __, __, No. 13-3314, 2016 WL 146560 (10th Cir. Jan. 13, 2016). The Fourteenth Amendment protects citizens from the deprivation of liberty without due process. *Martin*, 2016 WL 146560, at *18 (citing *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004). "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, a protectable liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name." *Martin*, 2016 WL 146560, at *18 (citing *Gwinn*, 354 F.3d at 1216) (internal quotation marks omitted). As noted above, damage to reputation alone is insufficient to establish a protected liberty interest. *See Martin*, 2016 WL 146560, at *18 (citing *Gwinn*, 354 F.3d at 1216; *Paul*, 424 U.S. at 711-12).

"For a plaintiff to prevail on a claim that the government has violated the Due Process Clause by damaging [his] reputation, that plaintiff must satisfy the 'stigma-plus' standard." *Martin*, 2016 WL 146560, at *18. This standard requires the plaintiff to demonstrate: (1) governmental defamation, and (2) an alteration in legal status. *Id.* (citing *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015)). "When these two elements are present, the government may have violated a liberty interest that triggers a

procedural due process protection." *Nixon*, 784 F.3d at 1368 (quoting *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012)); *see also Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 161 (2011) ("[S]tigma, standing alone, does not 'significantly alte[r]' a person's legal status so as to 'justif[y] the invocation of procedural safeguards.'").

Before turning to the merits of this claim, the Court addresses the State Defendants' statute of limitations defense. *Motion* [#13] at 7-8; *Motion* [#22] at 19-21. Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994). In Colorado, the limitation on a personal injury claim brought pursuant to § 1983 is two years. *See* Colo. Rev. Stat. § 13–80–102(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *see Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13–80–102 to a § 1983 claim). However, federal law rather than state law determines when a cause of action accrues. *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). Federal law provides that "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969. That is, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted). Here, Plaintiff convincingly responds that, with respect to the stigma-plus claims, the statute of limitations began to run on March 12, 2013, the day Plaintiff learned that his transfer request had been denied, and that because he filed this lawsuit on March 12, 2015, these claims are timely.

*Response* [#30] at 7.  The State Defendants appear to implicitly concede this argument. *Reply* [#45] at 6.  Accordingly, dismissal of the stigma-plus claims on the basis of statute of limitations is inappropriate.

In the districts which comprise the Tenth Circuit, stigma-plus claims have most often been utilized in connection with government employment.  *See, e.g.*, *Martin Marietta Materials, Inc.*, 810 F.3d at 1161; *Hale v. Emporia State Univ.*, No. 15-4947-SAC-KGS, 2016 WL 141655, at *3 (D. Kan. Jan. 12, 2016) (holding that the "plus" standard was not met by allegation that liberty interest in pursuing employment was jeopardized by a threat of discharge concurrent with defamation); *Monroe v. City of Lawrence, Kan.*, No. 13-2086-EFM, 2015 WL 5006081 (D. Kan. Aug. 20, 2015) (regarding termination of police officer from city police department); *Nixon*, 784 F.3d at 1364 (regarding suspension of police officer from city police department); *McDonald v. Wise*, 769 F.3d 1202 (10th Cir. 2014) (regarding termination of mayoral appointee based on sexual harassment complaint); *Salazar v. City of Albuquerque*, No. CIV 10-0645 JB/ACT, 2014 WL 6065603 (D.N.M. Oct. 27, 2015) (regarding termination of city bus driver).

The Court has been unable to find any case from these districts where a stigma-plus claim has been asserted in connection with allegations that a person is a "terrorist." However, at least a handful of other district courts have provided some discussion of this issue.  In *Vaher v. Town of Orangetown, N.Y.*, ___ F. Supp. 3d___, ___, No. 10 Civ. 1606(ER), 2015 WL 5602848, at *19 (S.D.N.Y. Sept. 23, 2015), a court in the Southern District of New York held that a stigma-plus claim failed because, while the "description of Plaintiff as a 'foreign spy' and 'terrorist' may be defamatory, . . . Plaintiff provides no evidence of a specific deprivation of his liberty or property interest that is close in time or origin to these

statements, nor any deprivation that explicitly or implicitly 'adopted' them.'" In *Latif v. Holder*, 28 F. Supp. 3d 1134, 1151-52 (D. Or. 2014), a court in the District of Oregon determined:

> Plaintiffs' private interests at the heart of their stigma-plus claim are not as strong [as their constitutionally-protected liberty interests in the right to travel internationally by air].  Although placement on the No–Fly List carries with it the significant stigma of being a suspected terrorist and Defendants do not contest the fact that the public disclosure involved may be sufficient to satisfy the stigma-plus test, the Court notes the limited nature of the public disclosure in this case mitigates Plaintiffs' claims of injury to their reputations.  Because the No–Fly List is not released publicly, the "public" disclosure is limited to a relatively small group of individuals in the same area of the airport as the traveler when the traveler is denied boarding.  Notwithstanding the fact that being denied boarding an airplane and, in some instances, being arrested or surrounded by security officials in an airport is doubtlessly stigmatizing, the Court notes the breadth and specificity of the public disclosure in this case is more limited than in the ordinary "stigma-plus" case.  *See, e.g.*, *Paul v. Davis*, 424 U.S. 693, 694-96 (distribution of a list and mug shots of "active shoplifters" to approximately 800 merchants); *Constantineau*, 400 U.S. at 435-36 (posting a list of the identities of those who have caused harm "by excessive drinking" in all retail liquor outlets); *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 973 (9th Cir. 2002) (filing of an adverse action report with the California Medical Board and the National Practitioner Data Bank detailing the reasons why a psychologist relinquished his privileges at a hospital).  Nevertheless, the Court concludes the injury to Plaintiffs' reputations is sufficient to implicate Plaintiffs' constitutionally-protected interests in their reputations.

In *Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1274 (D. Or. 2014), a court in the District of Oregon held with respect to a stigma-plus claim that:

> First, there is unquestionably a significant stigma attached to placement on the No–Fly List.  Indeed, it is difficult to conceive of a more stigmatizing status than being suspected of involvement with terrorist activity.  Second, at this stage of the proceedings Plaintiff's allegations that he is not involved in terrorist activity and does not pose a security threat to commercial aviation sufficiently contests the accuracy of the alleged stigmatization.  Third, as noted, Plaintiff's placement on the No–Fly List deprives him of his right to international travel by air, which satisfies the "plus" element.

Plaintiff asserts that "liberty interest involved [here] is the plaintiff's interest in his

good name." *Response* [#30] at 13.  Regarding a liberty interest in reputation, the United

States Supreme Court has not totally foreclosed this type of interest, despite the State

Defendants' argument to the contrary.  *See, e.g.*, *Reply* [#45] at 13.  In *Paul v. Davis*, the

Supreme Court explained:

> It is apparent from our decisions that there exists a variety of interests which
> are difficult of definition but are nevertheless comprehended within the
> meaning of either "liberty" or "property" as meant in the Due Process Clause.
> These interests attain this constitutional status by virtue of the fact that they
> have been initially recognized and protected by state law, and we have
> repeatedly ruled that the procedural guarantees of the Fourteenth
> Amendment apply whenever the State seeks to remove or significantly alter
> that protected status.  In *Bell v. Burson*, 402 U.S. 535 (1971), for example,
> the State by issuing drivers' licenses recognized in its citizens a right to
> operate a vehicle on the highways of the State.  The Court held that the State
> could not withdraw this right without giving petitioner due process.  In
> *Morrissey v. Brewer*, 408 U.S. 471 (1972), the State afforded parolees the
> right to remain at liberty as long as the conditions of their parole were not
> violated.  Before the State could alter the status of a parolee because of
> alleged violations of these conditions, we held that the Fourteenth
> Amendment's guarantee of due process of law required certain procedural
> safeguards.

> In each of these cases, as a result of the state action complained of, a right
> or status previously recognized by state law was distinctly altered or
> extinguished.  It was this alteration, officially removing the interest from the
> recognition and protection previously afforded by the State, which we found
> sufficient to invoke the procedural guarantees contained in the Due Process
> Clause of the Fourteenth Amendment.  But the interest in reputation alone
> which respondent seeks to vindicate in this action in federal court is quite
> different from the "liberty" or "property" recognized in those decisions.
> Kentucky law does not extend to respondent any legal guarantee of present
> enjoyment of reputation which has been altered as a result of petitioners'
> actions.  Rather his interest in reputation is simply one of a number which the
> State may protect against injury by virtue of its tort law, providing a forum for
> vindication of those interests by means of damages actions.  And any harm
> or injury to that interest, even where as here inflicted by an officer of the
> State, does not result in a deprivation of any "liberty" or "property" recognized
> by state or federal law, nor has it worked any change of respondent's status
> as theretofore recognized under the State's laws.  For these reasons we hold
> that the interest in reputation asserted in this case is neither "liberty" nor
> "property" guaranteed against state deprivation without due process of law.

> Respondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause.

424 U.S. at 710-12 (footnotes omitted).   Thus, the Supreme Court did not hold that an interest in reputation could never be vindicated under the due process clause, but only that the interest as asserted in *Paul* was insufficient.   In other words, the "plus" portion of a "stigma-plus" claim was missing on the facts of *Paul*. *See Nixon*, 784 F.3d at 1368 (stating that when *both* governmental defamation and an alteration in legal status are present, "the government may have violated a liberty interest that triggers a procedural due process protection").

In the present case, the State Defendants argue that Plaintiff has insufficiently pled a protectable interest in the alleged alteration of Plaintiff's legal status.   The Court agrees that Plaintiff's allegations regarding his change in legal status are problematic.   Plaintiff does not here seek a prisoner transfer to his home country of Saudi Arabia.   *See Response* [#30] at 5 ("In this lawsuit, [Plaintiff] does not seek to enforce any international treaty.   He is not asking CDOC to reconsider his transfer application.   He is not asking this court to order his transfer.").   In short, Plaintiff states that the alteration in his legal status which is at issue here was that "Defendants' defamation of him caused Mr. Clements to change [Plaintiff's] status from being a prisoner approved for an international transfer at the state level, to being a prisoner rejected for transfer at the state level."   *Response* [#30] at 15.

Plaintiff cites to CDOC's Administrative Regulation ("AR") 550-05, which describes the transfer application process.   In relevant part, this regulation provides:

1.   An offender requesting transfer shall make the request for transfer to their

assigned case manager and provide the case manager with proof of citizenship of the country he/she wishes to apply. 2. The case manager shall provide the offender with the Foreign National Offender Transfer Application . . . and Release of Information Consent Form . . . . 3. The forms required by the receiving treaty nation, AR 550-05A, a current classification, a case plan, and the case manager's review for eligibility and recommendation are forwarded to the administrative head. 4. The administrative head shall review the application and forward it with a recommendation to the Office of Offender Services. 5. The Office of Offender Services shall review the application, request permission for transfer from the sentencing court and/or detaining agency, if appropriate, and forward a recommendation to the director of Prisons. 6. The director will review the transfer application and accompanying recommendations and forward to the executive director or designee for final review and decision. 7. Upon approval of the transfer application by the executive director, the Office of Offender Services shall forward a completed application packet to the United States' Department of Justice, Office of Enforcement Operations, and include [various documents] . . . . 8. Upon final determination by the Department of Justice and the treaty nation, all parties involved in the application process will be advised of the decision . . . .

Plaintiff's argument is that, in violation of step (7) of the treaty application process, Defendants' defamatory statements caused Tom Clements, CDOC's then-executive director, to reconsider his approval of the transfer application before the application packet was received by federal authorities.

The Court assumes the veracity of Plaintiff's allegations underlying his argument that this regulation was violated. *See Mobley*, 40 F.3d at 340. However, even if a violation of the regulation occurred, "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citation omitted). "[A]ny such [property or liberty] interest must be created by state law by language of an unmistakably *mandatory* character." *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (citations omitted) (emphasis added).

To further explain the basis for creation of an interest protected by the due process

clause, the Court finds instructive the United States Supreme Court case of *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748 (2005).   The Court there stated that "[t]he procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit.'"  *Castle Rock*, 545 U.S. at 756.  Rather, "[a plaintiff] must . . . have a legitimate claim of entitlement to [the benefit]."  *Id.* (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  "Such entitlements are, of course, . . . not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Castle Rock*, 545 U.S. at 756 (quoting *Paul*, 424 U.S. at 709 (quoting *Roth*, 408 U.S. at 577) (internal quotation marks omitted)).  Importantly for the present case, the Supreme Court clearly stated that "a benefit is not a protected entitlement *if government officials may grant or deny it in their discretion.*"  *Castle Rock*, 545 U.S. at 756 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462-463 (1989)) (emphasis added).

As set forth in AR 550-05, the transfer application process utilized by Plaintiff includes multiple layers in which government officials may grant or deny the request for transfer.   Plaintiff has not asserted any applicable state law which "unmistakably" recognizes a liberty interest in having his application packet delivered to the federal government without allowing the executive director to reconsider approval of the recommendation in light of new information.  Plaintiff has not asserted a state law which mandates approval by the executive director under any given set of circumstances.  In fact, it is clear that the transfer application process involves layers of government officials, a number of whom have discretion over whether the application is granted.  There is nothing "mandatory" about the approval part of this process.  Simply because Plaintiff was *eligible*

to have a transfer request reviewed by the government does not mean that he would ultimately be transferred.

Further, the State Defendants argue, and the Court agrees, that Plaintiff has failed to explain how this change in legal status (which the Court assumes arguendo is indeed actually a *change* in legal status) is "significant." *See, e.g.*, *Reply* [#45] at 9. Without explanation, Tenth Circuit precedent has tended to omit the word "significantly" in its recitation of the elements required in a stigma-plus cause of action. *See, e.g.*, *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (citing to *Paul*, 424 U.S. at 693). However, the United States Supreme Court held in *Paul* that "the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or *significantly* alter that protected [legal] status." *Paul*, 424 U.S. at 711. Here, even if Defendants' alleged defamation caused the change in Plaintiff's "legal status from that of a prisoner with an approved treaty transfer application to that of a prisoner with a rejected treaty transfer application," it is unclear how Plaintiff's mere eligibility for removal from one prison and placement in another prison in a different location involves a significant change in his legal status. *See Response* [#30] at 15. Defendants point out, for example, that "Plaintiff cannot legitimately claim his transfer from a Colorado to a Texas prison or [from] a state to a federal prison changed his legal status," because "he would continue to be a prisoner serving a sentence imposed by the State of Colorado." *Reply* [#45] at 10 & 10 n.5. The Court is aware of no reason why this logic does not equally apply to Plaintiff's transfer from a prison in the United States to a prison in the Kingdom of Saudi Arabia. In addition, and importantly, Mr. Clements' alleged approval of the transfer was only one step in the process. Final approval was required from federal authorities. Thus, Plaintiff's legal status

-20-

was not affirmatively changed in any way which could be deemed "significant" under controlling Supreme Court precedent.  *See Paul*, 424 U.S. at 711.

For the foregoing reasons, Plaintiff's stigma-plus claim fails.  Additionally, Plaintiff asserts a claim for conspiracy with respect to the stigma-plus claim.  *See Am. Compl.* [#28] ¶¶ 173-82.  In the absence of an underlying cognizable cause of action, Plaintiff's conspiracy claim here also fails.  *Snell*, 920 F.2d at 701.

Accordingly, the Court **recommends** that Claim One and Claim Three be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

## C.    The Federal Defendants' Motion [#56]

With respect to Defendants Bibik and Goffi, i.e., the federal actors, the Court notes that "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity."  *Farmer*, 275 F.3d at 963.  Thus, Plaintiff's claims against these Defendants in their official capacities cannot proceed under *Bivens*.[5]  *See James*, 2016 WL 409433, at *1.  In the Response [#65], Plaintiff attempts to disclaim any connection to *Bivens*.  *See* [#65] at 2 (stating that "though such suits have at times been labeled '*Bivens* actions', [Plaintiff's] suit does not rely on *Bivens*").  However, this statement is irrefutably contradicted by the claims as asserted by Plaintiff in the Amended Complaint.  *See* [#28] at 26 ("Second Cause of Action: Deprivation of Due Process under *Bivens*—Stigma-Plus (5th Amendment) (Against Defendants Bibik and Goffi)"), at 28 ("Fourth Cause of Action: Conspiracy to Violate Due Process: *Bivens* Stigma-Plus (5th Amendment) (Against

---

[5]  However, Plaintiff may only pursue claims for injunctive relief against federal officials in their official capacity.  *See James*, 2016 WL 409433, at *1.  The Administrative Procedures Act, 5 U.S.C. § 702, waives sovereign immunity in most suits for claims "other than money damages."  *Id.* (citing *Simmat*, 413 F.3d at 1238-39).  These are not *Bivens* claims, as asserted by Plaintiff.

Defendants Bibik, Goffi, and John and Jane Doe Defendants 6-10)"), at 28 ("Sixth Cause of Action: Deprivation of Due Process under *Bivens*—Extreme Stigmatization and Defamation (5th Amendment) (Against Defendants Bibik and Goffi)"), at 33 ("Eighth Cause of Action: Conspiracy to Violate Due Process: *Bivens* Extreme Stigmatization (5th Amendment) (Against Defendants Bibik and Goffi)").  There is simply no way to reconcile Plaintiff's statement in the Response [#65] with the language of the Amended Complaint. Notwithstanding arguments to the contrary, *see Response* [#65] at 9-14, Plaintiff's claims asserted under *Bivens* are barred under binding Tenth Circuit authority, and these claims must therefore be dismissed.  *See James*, 2016 WL 409433, at *1 ("*Bivens* creates a cause of action only against federal officials in their individual capacities for money damages . . . .").

Thus, the only remaining claims are against the Federal Defendants in their individual capacities for injunctive relief.  The parties argue at length about whether this type of *Bivens* remedy is available to Plaintiff under the circumstances of this case.  *See Motion* [#56] at 5-7; *Response* [#65] at 9-14; *Reply* [#70] at 4-6.  However, even assuming that a *Bivens* remedy is available, Plaintiff's claims fail on the merits for the same reasons discussed in connection with the State Defendants' Motions.  In other words, Plaintiff has failed to state a claim regarding extreme stigmatization, stigma-plus, or conspiracy to commit either alleged constitutional violation.

Accordingly, the Court **recommends** that Defendants Bibik and Goffi's Motion [#56] be **granted** and that Claims Two, Four, Six, and Eight be **dismissed with prejudice**.  *See, e.g.*, *Byerly v. Lew*, No. CIV-15-630-C, 2015 WL 5725754, at *1 (W.D. Okla. Sept. 29,

2015).

**D.     John and Jane Doe Defendants**

Plaintiff also asserts Claim Three (i.e, a conspiracy claim under the Fourteenth Amendment) against John and Jane Doe Defendants 1-5, and Claim Four (i.e., a conspiracy claim under the Fifth Amendment) against John and Jane Doe Defendants 6-10. The Court sua sponte finds that these claims are also properly dismissed, in the absence of any underlying constitutional violations. *Snell*, 920 F.2d at 701.

Accordingly, the Court **recommends** that the John and Jane Doe Defendants be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127; *Driskell v. Thompson*, No. 12-cv-03107-REB-KLM, 2013 WL 5835114, at *1 n.3 (D. Colo. Oct. 30, 2013) (sua sponte raising issue of whether the John Doe defendants should be dismissed, and holding that it was appropriate to dismiss the claims against them "where it appears obvious that plaintiff could not prevail on the facts alleged and that allowing him an opportunity to amend his complaint would be futile").

**IV.  Conclusion**

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motions [#13, #22, #56] be **GRANTED**, that all claims be **DISMISSED with prejudice**, and that the John and Jane Doe Defendants be **DISMISSED with prejudice**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the

Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 25, 2016, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge